Turley, J.
delivered the opinion of the court.
This is an action on the case brought by the heirs at law of John Cheatham dec’d., by their guardian, Wm. K. Bowling, against Thos. Stratton and Joseph M. Swann, for the loss of a negro man named Edmund, hired to them for the year 1845, and never returned: there was a verdict and judgment in the circuit court of Davidson county for the plaintiffs, from which the defendants have appealed to this court.
Upon the trial, it appeared from the testimony of Wm. A. Cheatham, that he came to Nashville to live on the last day of December, 1844, that previous to his leaving home, Ms father requested Mm to call at the house of Thos. E. Stratton, and take the note of Joseph M. Swann for $100, for the Mre *431 of Edmund for the year 1845, that said Swann executed his note for that amount, with Stratton as his security, to his father, Richard Cheatham, who was guardian at that time for the minor heirs of John Cheatham dec’d, and took possession of the negro. That his father had permitted the negroes of the estate to seek the places or masters to whom they wished to be hired; that he supposes Edmund had selected Swann for the year 1845. That his father was indulgent to the negroes, and that Edmund was thought to be a good and trustworthy boy. That sometime in the summer of the year 1845, Swann stated to him that Edmund was desirous of making something for himself, by driving a hack, and asked him if there would be any impropriety in permitting him to do so, to which he replied, he thought not, that he did not consider himself as giving his consent to this as agent of his father, hut that he was only expressing his own opinion, thereon, but that there was nothing said relative to his agency in this particular; that the boy Edmund drove a hack about town in the summer and fall of that year, that he went to Memphis with his hack in the fall, where he remained a month or two, that the mother and sister of Edmund lived in Springfield, and that it was usual for him to visit them occasionally, that he had been hired at the Inn in Nashville for several years previous, and that Richard Cheat-ham, the guardian, lived in Springfield, and died on the 9th of September, 1845, and Win. K. Bowling was appointed in his stead.
It also appeared from the testimony of Wm. Philips, that in the summer of 1845, he sold a horse to the negro Edmund, with the consent of the defendants, and took his note for the purchase money, that he saw the negro during the summer and fall driving a hack about town, that he acted as a free person of color, and went with his hack to Memphis, where he remained several weeks, that after his returning, viz: about the *432 23rd of December, he showed to him a pass signed by one of the defendants, permitting him to go to Springfield, which was about 25 miles from Nashville, that he, witness, hired him a horse to ride there, and that he has never since seen either him or the horse.
It also appeared from the testimony of Samuel Gollady, that he, as agent for plaintiffs, called on defendants for the negro about the 24th day of December, 1845, and was informed that the negro was notin their possession, but had gone to Springfield, and that afterwards, in January or February,-he again called on them and told them that the negro was not in •Springfield. It also appeared from the testimony of Wm. Bateman, who had been in the habit of hiring out negroes for a long time, that it was not the custom to make a formal delivery of them at the expiration of the time of hiring, but that they were allowed to go at large, and to return home at the end of the year: and that it was usual to give hired negroes ■some days holiday about Christmas.
Upon this proof, the circuit judge, among other things not excepted to, charged the jury, “that if the defendants hired the negro generally, and permitted him to hire his own time, or act as a free person of color, it would not be a conversion for which they would be responsible, unless such act was the cause of the loss of the slave: as for instance, if it rendered his mind restless under bondage, and he made his escape in con-séquence thereof. In which event the owners might recover.” This charge we think is erroneous. The permitting the negro to hire his own time, or to act as a free man of color, could not of itself, as the judge correctly said, amount to a conversion; something more was necessary, viz, an elopement of the slave during the time he was removed from the , proper espionage of the defendants, in consequence of the enlarged liberty thus allowed him; but this is not the case. The attempt to charge the defendants for a loss which might be supposed to *433 have resulted from a restlessness on'the part of the slave under bondage produced by this liberty, and a consequent elopement, cannot be permitted; it rests upon ground too unstable for its support: the idea is too intangible, for a fixed principle/ The bailee of a negro would never be safe under such a rule of action, in the government and management of him, for the principle being that he is responsible for a loss, the consequence of his absconding from a restlessness under bondage, produced by the act of the bailee, any thing, done by him out of the usual course of treatment in such cases, from which such a state of mind might result, would charge him, and if necessary, Ms liability would in every instance rest upon the vague and uncertain opinion of a jury, as to whether such a state of mind had been produced by this improper conduct; such a principle would be dangerous and detrimental to the relation between bailor and bailee of this kind of property. But in addition to this, it appears that the defendants, before they would grant this latitude of action to the slave, Edmund, asked of Wm. Cheatham, the agent of Richard Cheatham (the guardian who hired the negro to them) for the purpose of taking the note, whether it would be improper to grant it, and was informed \y him that it would not. It is true that Wm. Cheatham says, that in saying this he did not consider himself as acting as his father’s agent, but only as expressing his opinion thereon. But the defendants did not know this, and he having been employed as his father’s agent in taking the note, it is fairly to be inferred that they supposed he might give his father’s assent to the granting the privilege asked by the slave, especially as he lived at the distance of 25 miles off, and it is proven he reposed great confidence in the negro, and extended to him privileges not usually granted to slaves. This at least shows an honest and careful action on the part of the defendants in relation to the negro.
But in addition, we are not prepared to say that the negro *434 was lost by the neglect or misconduct of tbe defendants, or by their want of reasonable care or diligence in relation to him. The proof shows that the negro had been hired in Nashville for several years, that he was permitted to seek his place and person to hire him, that he had selected the defendant, Swann, for the year 1845. It necessarily follows, as it seems to us, that he was going at large in the town of Nashville at the close of the year 1844, when he agreed to hire himself for the year 1845, to the defendants.
They then having found him at large at the expiration of the year 1844, and having contracted with himself for his hire for 1845, and finding his owner recognizing the act by completing the contract in taking their note, were warranted in concluding that such was his habit of acting, permitted by his master: and as we incline to think, would not be bound to see what became of him after the term for which they had hired him had expired, but that he might again seek a new home and a new master, without being returned to his master; but upon this point, inasmuch as a decision of it is not now necessary, we give no direct opinion.
The defendants were clearly justifiable in giving him a pass to go to Springfield, because the proof shows that his mother and sister resided there, that it had been the place of the residence of Richard Cheatham before his death, and that during the time he had been hired in Nashville, it had been customary to permit his visits to that place.
Let the judgments be reversed and the case remanded for a new trial.